**Opinion issued June 19, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00551-CV

_____

**JACOBS FIELD SERVICES NORTH AMERICA, INC., JACOBS ENGINEERING GROUP, INC., AND JACOBS ENGINEERING, INC.,** Appellants

**V.**

**TROY WILLEFORD, Appellee**

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2015-65988**

# MEMORANDUM OPINION

In this interlocutory appeal, Jacobs Field Services North America, Inc., Jacobs

Engineering Group, Inc., and Jacobs Engineering, Inc. (collectively "Jacobs") appeal

from the trial court's order denying its motion to dismiss Troy Willeford's claims of negligence, gross negligence, strict liability, and product defect against them. Jacobs contends that the trial court erred in denying its motion to dismiss because the certificate of merit filed with Willeford's petition fails to meet the requirements of section 150.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (West 2011). Jacobs also asserts that its motion to dismiss was not untimely and that the trial court was permitted to consider extrinsic evidence in ruling on its motion. We reverse and remand.

## Factual and Procedural Background

Willeford sued Jacobs, as well as numerous other entities not parties to this appeal,[1] for injuries he allegedly sustained after responding to the scene of a workplace accident involving his co-worker, Maurice Ware, at the Far East Coker Unit ("FECU") of the ExxonMobil refinery in Baton Rouge, Louisiana.[2] Willeford

---

[1]  The other named defendants are ExxonMobil Corporation, ExxonMobil Research & Engineering Company, ExxonMobil Refinery & Supply Company, Siemens Industry, Inc., AWC, Inc., Flowserve Corporation, Hydradyne, LLC, ISC, Constructors, LLC, Konecranes, Inc., NorWest Hydraulic & Pneumatic, Inc., Triad Control Systems, L.L.C., Triad Electric & Controls, Inc., ExxonMobil Global Services Company, Bayside Engineering Group, Inc., and Vallourec Drilling Products USA, Inc. f/k/a VAM Drilling USA, Inc.

[2]  On November 27, 2014, Ware was working at the FECU when the cable from a free falling bit and drill stem struck him, amputating his legs. After Ware filed suit, Jacobs moved to dismiss his claims against it under Chapter 150 of the Texas Civil Practice and Remedies Code. The trial court denied the motion, and Jacobs appealed. On November 21, 2017, the Fourteenth Court of Appeals issued a memorandum opinion dismissing the appeal for lack of jurisdiction. *Jacobs Field*

2

asserted claims against Jacobs for negligence, gross negligence, strict liability, and product defect.

In his amended petition, under the section entitled "Factual Allegations Regarding the Role of Each Defendant," Willeford alleged, in pertinent part:

> 4.9 **Jacobs Engineering, Inc.** Upon information and belief, Jacobs Engineering, Inc. completed the detailed design for the project to modify the Delayed Coker Unit in February 2007 to reduce the risks associated with manual unheading of the top heads. The factual support for this allegation is found in Mosenteen[3] exhibit 2, p. 1, ¶ 2, as well as in Mosenteen's testimony:
>
> > ***Deposition of Jon Mosenteen:***
> >
> > Q: And was Jacobs Engineering ultimately in charge of the design of that system in 2007 and '8?
> >
> > A: To the best of my knowledge, Jacobs Engineering was responsible for the overall design but they had some subcontractors, I believe who were assisting in the—in the design aspect of it.
> >
> > . . . .
>
> 4.10 **Jacobs Field Services North America, Inc.** Upon information and belief, Jacobs Field Services North America, Inc. provided programming and HMI configuration and was otherwise heavily involved in the upgrade for the PLCs in the Far East Coker Unit in 2013.[4] The factual support for this is found in Mosenteen exhibit 5,

_____

*Servs.*, *N. Am., Inc. v. Ware*, No. 14-17-00543-CV, 2017 WL 5618192 (Tex. App.—Houston [14th Dist.] Nov. 21, 2017, no pet.). The parties later settled.

[3] Mosenteen, an ExxonMobil employee, was the coker operations supervisor in Baton Rouge at the time of the accident.

[4] "PLC," or Programmable Logic Controller, is a specialized industrial computer which has been specifically designed to operate reliably in harsh usage

pages 60-61 (ExxonMobil Global Services Company procurement identifying Jacobs Engineering Group Inc. and Jacobs Field Services North America Inc. as providing requested work) and in Mosenteen's testimony:

***Deposition of Jon Mosenteen:***

A: Page 5 of 7 of what I believe is labeled Exhibit 2, Question No. 5, Jacobs Engineering sought to have completed the design programming of the PLC for the 2013 PLC upgrade project.

. . . .

Q:     Detail design, what does that mean?

A:     Well, the PLC is a series of, as best I can explain it, a series of yes/no questions and so it's logic that gets you to an end solution or an activity or permissi[on] for something to work.  Jacobs provided that programming, provided that service to be able to do that project.

Q:     Okay.  Did Jacobs actually come on-site?

A:     I believe they did.

Q:     And so essentially, in Exxon's mind, Jacobs was ultimately responsible for the correct programming of the PLC and HMI, fair?

A:     For the correct implementation of the programming, yes, sir.

---

environments and conditions, such as refineries and manufacturing. "Programming" a PLC means writing the software that controls the way the PLC behaves.  "HMI," or Human Machine Interface, is the graphical user interface for the PLC which allows the PLC to communicate with the operator.  "Configuring" an HMI means using a graphical computer programming language to create the HMI.

4

4.11 **Jacobs Engineering Group, Inc.** Upon information and belief, Jacobs Engineering, Group, Inc. provided programming and HMI configuration and was otherwise heavily involved in the upgrade for the PLCs in the Far East Coker Unit in 2013.

The ExxonMobil procurement document referenced in Willeford's amended petition identifies Jacobs's scope of work as follows:

WORK REQUESTED: PROVIDE PROGRAMMING AND HMI CONFIGURATION FOR THE NEW UPGRADED PLC[]S FOR THE FAR EAST COKER CUTTING CONSOLES. FOUR NEW PLC[]S AND HMI[]S WILL BE INSTALLED ONE FOR EACH DRUM, ALSO SITE ACCEPTANCE AND START UP SERVICES WILL BE PROVIDED.[5] PROVIDE INTOOLS WIRING.

To his amended petition, Willeford attached a certificate of merit affidavit of Gregg S. Perkin, a registered professional engineer in the field of mechanical engineering. A copy of Perkin's curriculum vitae and a list of the materials he reviewed in preparing the certificate were attached to his affidavit.

In his affidavit, Perkin stated that he has a Bachelor of Science in Mechanical Engineering and that he is a registered professional engineer in the field of mechanical engineering in the State of Texas. Perkin's affidavit further stated, in relevant part:

In mid-1986, I began my work as an independent professional Mechanical Engineering consultant.

---

[5] The site acceptance service refers to the development of site acceptance test procedures used during site acceptance testing performed by ExxonMobil. Jacobs was not responsible for performing the site acceptance test.

Since 1995, I have been employed by [Engineering Partners International] as an independent engineering consultant and Professional Engineer in the areas of detailed safety analysis of highly complex process units and systems within the processing industries and risk assessment for various industries. In these regards, and over the course of my professional career, I have actively worked in the areas of equipment design, manufacture, fabrication, assembly, construction, testing, operation, maintenance and retrofitting.

As one (1) of EPI's Principal Engineers, I have often been actively engaged in providing design engineering and independent engineering reviews and analysis. I have been independently retained to conduct product design analysis, design equipment, failure analysis, risk and hazard analysis, and provide other independent consulting services related to mechanical equipment and systems.

. . . .

Based on my education and professional experience, I have personal knowledge of the acceptable standards for the practice of providing design engineering services in the State of Louisiana which was the task to be performed by the engineering firm(s) referenced herein for ExxonMobil, at the Baton Rouge Refinery where Mr. Ware was severly [sic] injured.

Jacobs filed a motion to dismiss Willeford's claims on the basis that Perkin's certificate of merit affidavit failed to meet the requirements of section 150.002 of the Texas Civil Practice and Remedies Code. Specifically, Jacobs argued that Perkin's affidavit failed to (1) satisfy the "knowledge" requirement; (2) set forth the alleged negligence, errors, or omissions for each defendant; and (3) set forth the factual basis for each such claim. The trial court denied Jacobs's motion, and Jacobs filed this interlocutory appeal.

6

## Standard of Review

An order granting or denying a motion to dismiss for failure to file a certificate of merit is immediately appealable. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f) (West 2011). We review a trial court's order denying a motion to dismiss for abuse of discretion. *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 342 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Id.*; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2013, no pet.). As the party complaining of an abuse of discretion, Jacobs has the burden of bringing forth a record showing such abuse. *See Siemens Energy, Inc. v. Nat'l Union Fire Ins. Co.*, No. 14-13-00863-CV, 2014 WL 2531577, at *2 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied) (mem. op.).

## Applicable Law

Chapter 150 of the Civil Practice and Remedies Code governs suits filed against certain licensed professionals, including engineers. *See* TEX. CIV. PRAC. &

REM. CODE ANN. § 150.001(1-a) (West Supp. 2017).[6]  Section 150.002 provides, in

relevant part:

(a) In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer . . . who:

(1) is competent to testify;

(2) holds the same professional license or registration as the defendant; and

(3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's:

(A) knowledge;

(B) skill;

(C) experience;

(D) education;

(E) training; and

(F) practice.

(b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing

---

[6]  Willeford filed his original petition on November 3, 2015.  Because the underlying lawsuit was filed after September 1, 2009, the pertinent version of section 150.002 is the 2009 amended version.  *See* Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (codified at TEX. CIV. PRAC. & REM. CODE § 150.002).

advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. The third-party . . . licensed professional engineer . . . shall be licensed or registered in this state and actively engaged in the practice of . . . engineering . . . .

. . .

(e) The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

(f) An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.

*Id.* § 150.002.

## Analysis

Before we consider whether Perkin's certificate of merit affidavit complies with section 150.002, we address several threshold issues raised by the parties in their briefs.

## Applicability of Section 150.002

In his brief on appeal, Willeford contends that although he filed a certificate of merit affidavit with his petition, he did so out of an abundance of caution and his filing does not waive his argument that section 150.002 does not apply to this case. In particular, he argues that Jacobs failed to demonstrate to the trial court that it is a "licensed or registered professional," or that its conduct giving rise to Willeford's claims against Jacobs was committed in the course of "provi[ding a] professional service." *Id.* at §150.002(a).

9

In his response to Jacobs's motion to dismiss, Willeford argued that Perkin's certificate of merit complies with section 150.002 because it satisfies the knowledge requirement and adequately sets forth the factual bases for Willeford's claims.[7] Willeford did not argue to the trial court that the statute does not apply to this case.[8] Instead, he challenges the applicability of the statute for the first time on appeal.

To preserve a complaint for appellate review, the record must demonstrate that the complaining party made the complaint to the trial court by timely request, objection, or motion, stating with sufficient specificity the grounds for the requested ruling. *See* TEX. R. APP. P. 33.1(a)(1)(A). Because Willeford did not raise this argument in the trial court, he has not preserved this issue for our review. *See E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987) (concluding that argument that Deceptive Trade Practices Act was inapplicable to securities transactions was never presented to trial court and was therefore waived); *State v. Wilson*, 490 S.W.3d 610, 622–23 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that where State did not present four of its five public policy arguments

---

[7] In his response, Willeford referred to Jacobs as a licensed engineering firm and stated that "§ 150.002 sets forth a minimal threshold requirement that a plaintiff must satisfy when suing a licensed engineer for an action that arises out of the provision of professional services."

[8] On appeal, Willeford acknowledges that "[t]he record does not indicate that the trial court considered the applicability of CPRC § 150.002 in denying Jacobs' motion to dismiss."

10

to trial court, it had not preserved those complaints for appellate review); *Robertson Cty. v. Wymola*, 17 S.W.3d 334, 344 (Tex. App.—Austin 2000, pet. denied) (concluding county's claim that it was immune from post-judgment interest not raised at trial court level may not be raised for first time on appeal).

### Timeliness of Jacobs's Motion to Dismiss

Willeford argues that the trial court did not err in denying Jacobs's motion to dismiss because the motion was untimely.[9] Jacobs contends that its motion to dismiss was not untimely and that, even if it was, the trial court could not have properly denied Jacobs's motion to dismiss on this ground.[10]

Section 150.002 does not impose a deadline to move for dismissal. *See* TEX. CIV. PRAC. & REM. CODE § 150.002. "When a statute does not contain a deadline, the mere fact that a defendant waits to file a motion to dismiss is insufficient to establish waiver." *Ustanik v. Nortex Found. Designs, Inc.*, 320 S.W.3d 409, 413 (Tex. App.—Waco 2010, pet. denied) (citing *Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003)). Willeford concedes that section 150.002 does not impose a deadline. Nevertheless, he argues, Jacobs's filing of its motion approximately

---

[9]     In a footnote in his response to Jacobs's motion, Willeford similarly asserted that "[i]t seems that Jacobs' motion, at this stage of the litigation, is tardy and defeats the initial gatekeeping function intended by the statute."

[10]    The trial court's order does not state the basis on which it denied Jacobs's motion to dismiss.

six-and-a-half months after Willeford filed his amended petition and after significant discovery had taken place defeats the purpose of the statute and provided the trial court with a sufficient basis upon which to deny Jacobs's motion. Willeford's argument is unavailing.

In *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, Crosstex, a natural gas compression station owner hired Pro Plus, a licensed professional engineering firm, as the principal contractor to construct a compression station. *See* 430 S.W.3d 384, 387 (Tex. 2014). Following a massive fire that caused $10 million in property damage, Crosstex sued Pro Plus for negligence, negligent misrepresentation, breach of implied and express warranty, and breach of contract. *See id*.

After the statute of limitations had run on Crosstex's negligence claims, and more than seven months after Crosstex had filed its petition, Pro Plus moved to dismiss Crosstex's claims for failure to attach a certificate of merit to its original petition as required by section 150.002. *See id.* Crosstex responded that Pro Plus had waived its right to dismissal by, among other things, substantially invoking the judicial process through participating in discovery. *See id.* at 387, 394.

Noting that "[w]aiver is primarily a function of intent," the Texas Supreme Court stated that "[t]o find waiver through conduct, such intent 'must be clearly demonstrated by the surrounding facts and circumstances.'" *Id.* at 393–94 ("We will not find waiver where a person 'says or does nothing inconsistent with an intent to

12

rely upon such right.'"). The Court then concluded that Pro Plus's participation in discovery, specifically, the exchange of 11,000 pages of written discovery between the parties, did not demonstrate an intent to waive the right to dismiss under subsection 150.002(e). *Id.* at 394–95 ("Quite simply, '[a]ttempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal.'"). Other courts have similarly refused to find waiver based upon substantially longer delays than the one here. *See, e.g.*, *Found. Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 833–34 (Tex. App.—Fort Worth 2014, pet. denied) (finding engineer defendants' twenty-two month delay and participation in minimal discovery did not deny them their right to dismissal under section 105.002, noting "we cannot imply waiver based only on delay when the legislature did not provide a deadline for filing a motion to dismiss under section 150.002"); *Ustanik*, 320 S.W.3d at 413–14 (concluding that although defendant engineers waited nearly two years and five months to file motion to dismiss, participated in discovery, and filed motions for summary judgment, conduct did not evidence intent to waive right to assert dismissal under section 105.002); *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 411 (Tex. App.—Dallas 2010, pet denied) (holding defendant architects were not precluded from seeking dismissal under section 105.002 even though they had participated in litigation process and waited more than one year after they were sued to file motion to dismiss). We

13

conclude that the trial court could not have properly denied Jacob's motion to dismiss on this ground.

## Compliance with Section 150.002(a)(3)

Jacobs argues that Perkin's certificate of merit affidavit fails to comply with section 150.002(a)(3) because it does not demonstrate that Perkin is knowledgeable in Jacobs's area of practice at issue in this litigation. Specifically, Jacobs argues that nothing in Perkin's certificate of merit, or elsewhere in the record, demonstrates that Perkin is knowledgeable about software engineering or computer programming. Jacobs relies on the Texas Supreme Court's recent decision in *Levinson Alcoser Associates, L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487 (Tex. 2017) in support of its argument.

In *Levinson*, El Pistolón hired Levinson (the "architects") to design and oversee the construction of a commercial retail project. *See id*. at 489. Disappointed with the architects' services, El Pistolón sued Levinson, alleging breach of contract and negligence in the project's design and development. *Id.* El Pistolón filed a certificate of merit affidavit of Gary Payne, a third-party licensed architect, with its original petition. *Id*.

The architects moved to dismiss El Pistolón's suit on the grounds that Payne's affidavit did not satisfy the knowledge or factual basis requirements of section 150.002. *See id.* 489–90. The trial court denied the motion to dismiss and the

14

architects appealed. The court of appeals affirmed the portion of the trial court's order denying dismissal of El Pistolón's negligence claim, concluding that Payne's affidavit satisfied both the statute's knowledge and factual basis requirements as to that claim.[11] *See id.* at 490. The architects appealed the decision, arguing that Payne's affidavit was insufficient because Payne was not properly qualified under the statute to give a professional opinion. *See id.* at 491.

The Texas Supreme Court noted that, under section 150.002, a third-party professional is qualified to render a certificate of merit if he (1) holds the same professional license or registration as the defendant; (2) is licensed or registered in the state; (3) is actively engaged in the practice; and (4) is knowledgeable in the defendant's area of practice. *Id.* at 492. The Court concluded that Payne's affidavit satisfied the first three statutory factors under section 150.002—it showed that he was a professional architect, he was registered to practice in Texas, and he was actively engaged in the practice of architecture—but that the affidavit did not provide any information about Payne's knowledge of Levinson's area of practice. *See id.*

---

[11] The court reversed the trial court's order as to the contract claim, concluding that Payne's affidavit was deficient as to that claim, and it remanded for the trial court to determine whether the contract claim should be dismissed with or without prejudice. *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 490 (Tex. 2017).

15

The Court explained that "the statute's knowledge requirement is not synonymous with the expert's licensure or active engagement in the practice; it requires some additional explication or evidence reflecting the expert's familiarity or experience with the practice area at issue in the litigation." *Id.* at 494. The Court agreed that such knowledge may be inferred from sources in the record other than the expert's affidavit, and that the certificate of merit was not deficient merely because it failed to show on its face that Payne possessed knowledge of the architects' area of practice. *See id.* at 493–94. It noted, however, that the court of appeals' opinion did not identify a source for such an inference other than Payne's affidavit, and that El Pistolón did not point to "anything in the record from which to infer Payne's knowledge or background in the design of shopping centers or other similar commercial construction." *Id.* at 493. "Because nothing exists in Payne's affidavit from which to draw an inference that Payne possessed knowledge of the defendants' area of practice beyond the generalized knowledge associated with holding the same license, we conclude that Payne has not shown himself qualified to render the certificate of merit." *Id.* at 494.

Jacobs contends that, like El Pistolón, Willeford impermissibly attempts to satisfy section 150.002(a)(3)'s knowledge requirement by relying on Perkin's averments in his certificate of merit that he is a registered professional engineer in the State of Texas and has been actively engaged in providing engineering services

since 1995. *See id.* (explaining that "court of appeals' interpretation conflates the knowledge requirement with the requirement that the third-party expert hold the same professional license or registration as the defendant"). Jacobs argues that, under *Levinson*, Perkin's general knowledge of Jacobs's broad practice area, i.e., engineering, is insufficient to qualify him to render a certificate of merit in this case.

Willeford argues that *Levinson* is distinguishable because the expert in *Levinson* provided no information about his experience, training, practice, qualifications, or knowledge, other than the fact that he was a licensed architect. In contrast, he argues, Perkin states in his certificate of merit that "he has been engaged as an engineer in the areas of detailed safety analysis of highly complex process units, including the areas of equipment design, manufacture, fabrication, assembly, construction, testing, operation, maintenance and retrofitting." Willeford also points out that Perkin "describes how he has 'almost 50 years of experience in rotary drilling operations,' his clientele includes energy and related industries and the oil and gas industry," and that Perkin states "based on my education and professional experience, I have personal knowledge of the acceptable standards for the practice of providing design engineering services in the State of Louisiana which was the task to be performed by the engineering firm(s) referenced herein for ExxonMobil, at the Baton Rouge Refinery, where Mr. Ware was severly [sic] injured." Willeford

argues that *Dunham Engineering*, rather than *Levinson*, is more on point with this case.

In *Dunham Engineering*, the City of Lake Jackson hired Dunham Engineering, Inc. ("DEI") to design and produce engineering plans and specifications, and a draft set of contract documents for the repainting and rehabilitation of a 500,000 gallon water tower. *See id*. at 788. The City also hired DEI to advertise for contractor bids on, and assist the City in reviewing the bids and selecting the winning bid for, the project. *Id.*

After DEI turned down Sherwin-Williams's request to substitute its paint products for the paint products DEI had specified because DEI did not consider Sherwin-Williams's products to be "equal," Sherwin-Williams sued DEI, asserting claims of intentional interference with prospective business relationships, business disparagement, and product disparagement. *See id.* To its original petition, Sherwin-Williams attached a certificate of merit affidavit of James O'Connor, a licensed professional civil engineer and engineering professor. *Id.* DEI moved to dismiss Sherwin-Williams's suit, arguing that its certificate of merit affidavit failed to meet the requirements of section 150.002. *Id.* at 789. The trial court denied DEI's motion, and DEI appealed. *Id.*

The court of appeals rejected as an overly narrow construction DEI's argument that O'Connor's certificate of merit affidavit was insufficient because it

18

did not demonstrate that he was knowledgeable in "professional engineering services related to water storage tanks and corrosion control." *See id*. at 794. "[W]hat DEI proposes is that section 150.002(a)(3) requires that we evaluate certificates of merit on the basis of engineering specialties. However, the plain language of . . . section 150.002(a)(3) . . . specifically states only that the engineer opining in the certificate of merit be 'knowledgeable in the area of practice of the defendant.'" *Id*.

The court noted that O'Connor's certificate indicated that he held a Ph.D. in civil engineering, was licensed by the State of Texas as a professional civil engineer, served as a professor in project management within the civil engineering department at the University of Texas, and that, through his practice, research, and teaching, he was familiar with the legal requirements and industry customs regarding competitive bidding on public works projects. *Id.* at 795. Noting that DEI was involved in the preparation and direction of plans and specifications for a Texas public works project, the court concluded that the trial court had not abused its discretion in determining that O'Connor was knowledgeable in DEI's area of practice. *See id.*

Jacobs argues that *Dunham Engineering* does not support Willeford's position because, unlike the defendant there, Jacobs does not contend that Perkin lacks knowledge of an engineering "specialty." For example, Jacobs contends, it does not assert that Perkin lacks knowledge of computer programming and software engineering for control of industrial machinery in oil refineries, as opposed to

19

industrial machinery in other applications. Rather, it argues that "Perkin lacks knowledge of computer programming and software engineering for control of industrial machinery, period."

In his amended petition, Willeford alleges that Jacobs "provided programming and HMI configuration" for the four new upgraded PLCs in the Far East Coker Unit, and that it completed the detail design for the project. He further alleges that Jacobs "engaged in defective work related to designing, wiring, installing, constructing, and programming the coker unit's PLCs, HMI's load cells, and failed to ensure the functionality of its work and the unit as a whole following its work."

In support of his allegations, Willeford relies on Mosenteen's deposition testimony and the ExxonMobil procurement document identifying Jacobs's scope of work on the project. Mosenteen testified that Jacobs was responsible for the programming of the PLCs and HMI, and that "detail design" refers to the design and development of the logic underlying the software program Jacobs wrote for the upgraded PLCs. Similarly, the procurement document identifying Jacobs's scope of work on the project states that Jacobs was to "provide programming and HMI configuration for the new upgraded PLCs for the Far East Coker Cutting Consoles," and that site acceptance and start up services and intools wiring would be provided.

There is nothing in Perkin's certificate of merit, or elsewhere in the record, showing that Perkin is knowledgeable about computer programming or software engineering for control of industrial machinery, Jacobs's practice area at issue. Notably, Perkin states, "I am informed that the PLC and/or HMI providing all/or some of this information to a DCSU [Delayed Coker System Unit] Operator was not fully functioning." There is no mention in the certificate of designing, wiring, installing, constructing or programming PLCs, HMIs, or load cells, nor is there any mention of acceptance testing of PLCs or HMIs.[12] Neither Perkin's background nor his active practice reflects knowledge, experience, education, or training in computer programming, software engineering, PLC programming, HMI configuration, or site acceptance testing of PLCS and HMIs. Instead, Perkin's certificate shows that he is a mechanical engineer with experience in, and familiarity with, mechanical systems, in particular, equipment design, manufacture, fabrication, assembly, construction, testing, operation, maintenance, and retrofitting.[13]

---

[12]    Perkin does not identify the PLC software program written by Jacobs, ExxonMobil's specifications for that program, or the site acceptance test procedures written by Jacobs for the upgraded PLCs and HMIs as being among the materials he reviewed in rendering his certificate of merit. *See M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 504 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (noting that certificate of merit reflected that, in forming his opinions, expert had read project specifications and drawings, assessed whether HVAC system complied with those documents, and determined, based on his training and experience, whether HVAC system, as actually installed, functioned properly as part of project).

[13]    Perkin summarizes his minimal expectations for the DSCU drilling operations, based on his "almost fifty years of experience in rotary drilling operations," in

21

Willeford argues that Jacobs mischaracterizes his claims as claims about coding or software design. He asserts that his claims center on the failure to implement certain safety features, mechanical design flaws, and the failure to conduct adequate site acceptance testing and other testing of the mechanical components of the PLC and HMI. However, the record shows that these duties were not within Jacobs's scope of work on the project. To its motion to dismiss, Jacobs attached the affidavit of Franz Rosenthal, an instrument engineer with ExxonMobil Chemical Corporation, who was responsible for the Far East Coker Unit upgrade in 2013. Rosenthal averred, in pertinent part:

> 2.     While at ExxonMobil, we tested any new equipment installed at the Far East Coker unit for functionality to ensure it met ExxonMobil's design, specifications, and performance criteria. Jacobs was responsible for developing the site acceptance test procedures. As part of the installation and verification process, ExxonMobil would perform a site acceptance test (SAT).
>
> 3.     ExxonMobil hired Jacobs to provide input/output list and the programming for the programmable logic controllers (PLCs) and the human machine interface (HMI) for the 2013 Far East Coker unit cutting consoles upgrade (FECU). [] PLCs are configurable mini-computers that usually have electrical signals wired into them and are used to control processes. The PLC runs software as a personal computer. Jacobs developed and installed the

---

eleven bullet points in his certificate of merit. These points, however, address mechanical design and procedural issues, none of which are related to the activities within Jacobs's scope of work. *See id.* at 503 (concluding that trial court could have considered, among other facts, expert's descriptions and analysis of eleven sets of identified problems in building's HVAC system that he attributed to defendant engineer).

program used in the PLCs for FECU, using a language specific for that purpose.

4.    Site acceptance services means to provide support services to ExxonMobil during site acceptance testing that was performed by ExxonMobil. Jacobs was not specifically contracted to perform the site acceptance test on the 2013 FECU. Jacobs was responsible for ensuring the PLCs operated per ExxonMobil's design and performance criteria. The PLCs complied with all of ExxonMobil's design and performance standards. ExxonMobil personnel performed the SAT and Jacobs was there primarily in an advisory capacity if issues arose. The SAT was successfully completed to ExxonMobil's satisfaction.

Thus, while its duties included providing site acceptance services, including developing the procedures for site acceptance testing, Jacobs did not conduct site acceptance testing or testing of other equipment at the FECU. ExxonMobil did.

Willeford also asserts that Jacobs's claim that a software engineer is necessary to render a certificate of merit in this case fails as a matter of law. It is true that a third-party expert need not practice in the same practice area at issue to be knowledgeable to render an opinion under the statute. *See Levinson*, 513 S.W.3d at 492–93; *Gaertner v. Langhoff*, 509 S.W.3d 392, 397 (Tex. App.—Houston [1st Dist.] 2014, no pet.). However, Jacobs does not make this argument. Rather, it contends that Perkin does not satisfy the "knowledge" requirement because there is nothing in the record indicating that Perkin is knowledgeable in Jacobs's specific area of practice. *Compare Levinson*, 513 S.W.3d at 493 (concluding that expert had not shown himself qualified to render certificate of merit where there was nothing

23

in record from which court could infer expert's knowledge or background in defendant architects' practice area, i.e. design of shopping centers or other similar commercial construction), *with Melden & Hunt, Inc. v. East Rio Hondo Water Supply Co.*, 520 S.W.3d 887, 891 (Tex. 2017) (agreeing with court of appeals that expert's averments of many years of experience "in master planning, detailed design and construction management," and about his "education and experience in the design and analysis of water treatment plants, including clarifiers, pumps, filters, piping, controls, and chemical fees systems" were factual statements supporting conclusion that expert was knowledgeable in defendant engineer's practice area), *and Dunham Eng'g, Inc.*, 404 S.W.3d at 795 (concluding section 150.002(a)(3) was satisfied where expert's affidavit indicated that through practice, research, and teaching, he was familiar with legal requirements and industry customs regarding competitive bidding on public works projects like those at issue), *and M–E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 501, 504 (concluding district court did not abuse its discretion in determining that expert was knowledgeable in defendant engineer's practice area where expert averred in his certificate that he practiced in same design of heating, ventilating, air conditioning systems, and plumbing systems as defendant, and other facts tended to confirm expert's knowledge such as his descriptions and analysis of eleven sets of identified problems in building's HVAC system).

Willeford's argument is essentially that because the system failed, every component of the system failed. That may or may not be true, but Jacobs has broken its component of the system out of the system and challenged Willeford to show in what particular way it failed. The first step Willeford must take is to satisfy the requirements of section 150.002 with a certificate of merit which demonstrates that the expert called upon to criticize the computer programming and installation is qualified to do so. There is nothing in Perkin's curriculum vitae or his affidavit showing that he possesses knowledge regarding the role that computer programming played in the system's alleged failure. While Perkins is, based on his certificate of merit, qualified to review and criticize the coordination, design, and functioning of complex refinery systems, there is nothing in the record which indicates his expertise in the area of computer programing, design, or installation. The certificate of merit does not meet the standards of section 150.002 with regard to Jacobs.

Because nothing exists in Perkin's certificate of merit affidavit, or elsewhere in the record, indicating that Perkin possesses knowledge of Jacobs's practice area, Perkin has not shown himself qualified to render the certificate of merit. The trial court erred in denying Jacobs's motion to dismiss. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 150.002(e) (requiring dismissal when plaintiff fails to file compliant affidavit). Accordingly, we sustain Jacobs's issue.[14]

### Conclusion

We reverse the trial court's order denying Jacobs's motion to dismiss, and we remand the cause to the trial court to determine whether the dismissal of Willeford's claims shall be with or without prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e) (providing that dismissal based on plaintiff's failure to file certificate of merit in accordance with statute "may be with prejudice").


Russell Lloyd
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

---

[14] In light of our disposition, we need not reach Jacobs's issues regarding whether Perkin's certificate of merit specifically addresses Jacobs and its conduct, as required by section 150.002(b), or whether the trial court was permitted to consider the affidavit of Jacob's engineering expert, Richard Hooper, attached to its motion to dismiss.